United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 17, 2004**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

No. 03-60809
Summary Calendar

COOPER/T. SMITH, INC.,

AND

AMERICAN LONGSHORE MUTUAL ASSOCIATION, LTD,

Petitioners,

VERSUS

RAYMOND VELES;
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
U.S. DEPARTMENT OF LABOR,

Respondents.

Petition for Review of an Order of
the Benefits Review Board
m 02-0779

Before SMITH, DEMOSS and
   STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

## I.

The claimant, Raymond Veles, worked as a longshoreman for the employer, Cooper T/ Smith, Inc. ("Cooper"). During the course of his work, on November 26, 1999, a "cheater pipe" broke loose and collided with his knee, causing him to fall. Veles duly informed Cooper of his injury.

Somewhat later, after pain lingered in his knee, Veles visited his family physician, who examined the resulting swollen, bruised knee and recommended physical therapy. After therapy and medication failed to provide relief to pain, Veles' treating orthopedist, Bryan, gave him to an MRI, tentatively concluding he had torn meniscus. An independent Department of Labor physician, Butler, concluded that the knee problems arose from the aggravation of Veles's pre-existing chondromalacia, a diagnosis confirmed by Bryan during arthroscopic surgery in November 2000. As a result of back problems, Veles also had back surgery in February 2002 under Gerzbein's care.

## II.

Veles filed his benefits claim pursuant to the Longshore and Harbor Workers' Compensation Act to secure payment from respondents Cooper and the American Longshore Mutual Association. 33 U.S.C. § 901. The administrative law judge ("ALJ")

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

found Veles credible with respect to the symptoms of his injury and relied on treating physicians' testimony in finding that the cheater pipe accident had exacerbated an existing medical condition to the extent that Veles became unable to continue his longshore work.

Because the ALJ concluded that the injuries arose from a work-related accident, that Veles's knee injury resulted in permanent disability, and that his back injury resulted in a temporary disability, the ALJ concluded that Veles was due appropriate benefits. The ALJ also decided that Veles had reached maximum medical improvement for his knee injury on November 12, 2001, and keyed his receipt of benefits accordingly, including temporary total disability payments from November 26, 1999, to November 11, 2001, and permanent total disability compensation thereafter. The Benefits Review Board ("BRB") affirmed. Cooper and the carrier petition for review, arguing that the ALJ's findings are not supported by substantial evidence.

## III.

We review decisions of the BRB for errors of law. Like the BRB, we may gainsay the ALJ's findings of fact only if they are unsupported by substantial evidence. Especially, we must respect the ALJ's evaluations of witness credibility, whether the witness is lay or expert. *Calbeck v. Strachan Shipping Co.*, 306 F.2d 693. We will not interfere with the ALJ's credibility determinations unless they are "inherently increditable or patently unreasonable." *Dir., OWCP v. Bethlehem Steel Corp.*, 620 F.2d 60 (5th Cir. 1980). We look to whether the BRB has applied the correct deferential standard of review with respect to the ALJ's findings of fact, or equivalently that it has not substituted

its own view for the ALJ's. *New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031 (Former 5th Cir. Nov. 1981).

### A.

Respondents contend that the ALJ's finding that Veles sustained permanently disabling work-related injuries is not supported by substantial evidence. Respondents dispute that Veles's knee and back problems arose from a work-related injury. Cooper contends that the "cheater pipe" accident resulted in a temporary bruise, which acted to exacerbate neither existing chondromalacia in his knee or the problems with his spine. Rather, respondents assert that Veles is a malingerer and exaggerated the extent of the injury to his knee. They fault the ALJ for preferring the testimony of treating physicians over respondents' expert witness and for crediting Veles's testimony with respect to the difficulties caused by his knee and back.

In deciding whether the knee and back injuries were work-related, the ALJ properly undertook the presumption-shifting framework described by section 20(a).[1] The claimant established his *prima facie* case, the defense rebutted, and the ALJ heard arguments from both sides concerning the whole record.

The key testimony before the ALJ included Department of Labor physician Butler's testimony that the pre-existing condition of chondromalacia was exacerbated by the accident and that Veles's back problems were intensified by his resulting limp; and Cooper's examining physician Fultz's admission that the pre-existing condition of chondromalacia had likely been exacerbated by the accident. *See Conoco, Inc*. 194 F.3d 684, 33 BRBS 187 (CRT) (holding that employer is liable for aggravation of pre-existing injury). The ALJ credited the testimony of Gertzbein, who concluded that the back injury also flowed from the accident as a result of Veles's resulting limp. The ALJ noted that Bryan believed, at least as of July 11, 2001, that there was nothing he could do to improve the function of the knee. Importantly, the ALJ also heard Veles's description of the accident and the symptoms of his injury, and the ALJ found his testimony to be straightforward and credible.

The ALJ's findings are supported by substantial evidence, and the BRB acted properly in refusing to gainsay them. Though respondents point to Fultz's doubts that the back injury flowed from Veles's limp, and point to claimant's alleged "hypersensitivity" to pain, it was within the ALJ's purview to exercise his judgment in evaluating witnesses' credibility and in assembling the evidence presented to him. Merely because different determinations of credibility could have led to different conclusions, does not mean that the ALJ's fact finding was unsupported by substantial evidence.

### B.

In assessing the point at which Veles's disability became permanent, the ALJ analyzed

---

[1] A claimant must establish a *prima facie* case that the accident occurred at the place of employment and could have caused harm or pain or aggravated a pre-existing condition, which the employer may rebut by producing substantial evidence that the injury is not related to employment. *See, e.g., Gooden v. Dir., OWCP*, 135 F.3d 1066, 32 BRBS 59 (CRT) (5th Cir. 1998); *Conoco, Inc. v. Dir., OWCP*, 194 F.3d 684, 33 BRBS 187 (CRT) (5th Cir. 1999). If the employer rebuts, the burden of persuasion shifts to the claimant to show causation, based on the record as a whole. *See, e.g., Universal Maritime Corp, v. Moore*, 126 F.3d 256, 31 BRBS (CRT) (4th Cir. 1997).

the time when his knee injury reached "maximum medical improvement." The respondents dispute the ALJ's finding that maximum medical improvement had been reached on November 12, 2001, when treatment, including surgeries, were undertaken thereafter.

Maximum medical improvement may have been reached, however, before the end of a series of surgical treatments, when the later surgeries will not improve the claimant's ability to perform. *Sketoe v. Dolphin Titan Int'l*, 28 BRBS 212 (1994). Moreover, even where a doctor's prognosis indicates that a condition may improve, but where the condition has a lasting and infinite duration, the ALJ may yet conclude that a claimant has reached maximum medical improvement. *Brown v. Bethlehem Steel*, 19 BRBS 200 (1987). The ALJ relied on the testimony of Veles's treating doctors over that of Cooper's expert in determining that Veles reached maximum medical improvement with respect to his knee on November, 12, 2001. There is substantial evidence to support the ALJ's finding.

## C.

Respondents contend the ALJ erred in awarding total disability benefits, saying that the ALJ did not rely on substantial evidence of Veles's inability to return to his usual work. The ALJ heard Gertzbein's testimony that Veles's knee condition will prevent him from returning to his former, physically demanding job. Given the infirmity of Veles's knee, the ALJ relied on substantial evidence in deciding that Veles was permanently unfit for longshore work.

Once a claimant establishes inability to return to his usual work, the employer may take up the burden of showing the availability of suitable alternative work. *See Turner*. Veles demonstrated that he was functionally illiterate and unable to perform any work at the time the record closed, and respondents presented no evidence of suitable alternate employment. The ALJ relied on substantial evidence in concluding that Veles was totally disabled.

The petition for review is DENIED.

4