Revised January 11, 1999

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 96-60717

OREL J. LEDET,

Petitioner,

versus

PHILLIPS PETROLEUM COMPANY;
DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,

Respondents.

Petition for Review of an Order of the
Benefits Review Board

December 21, 1998

Before POLITZ, Chief Judge, JONES and DUHÉ, Circuit Judges.

POLITZ, Chief Judge:

Orel J. Ledet appeals the final order of the Benefits Review Board affirming

the Administrative Law Judge's award of benefits under the Longshore and Harbor

Workers' Compensation Act (LHWCA).[1]  For the reasons assigned, we affirm in

part and vacate and remand in part.

_____

[1]33 U.S.C. § 901, *et seq.*

## BACKGROUND

Ledet was employed as a mechanic by Phillips Petroleum and, during the course of this employment, was injured when he slipped and fell from a crane on August 22, 1989. At the time of the accident he received first aid but did not request or receive medical attention from a doctor. Ledet continued working until October 20, 1989,[2] when he called his immediate supervisor to report that he was unable to work because of a back injury.

Ledet sought medical treatment from his family physician who referred him to an orthopedic surgeon, Dr. Louis Blanda. Dr. Blanda recommended physical therapy and pain killers for the back strain. Phillips, as part of its investigation of Ledet's absence from work, ordered Ledet to undergo a work fitness examination by Dr. James Fournet, a company appointed physician. Dr. Fournet's examination of Ledet on December 5, 1989 revealed no objective signs of injury.

Ledet was contacted by his supervisor several times during December 1989 and January 1990 advising him that he should either provide medical evidence from his attending physician showing that he was medically disqualified or return to work immediately, cautioning that failure to do so would result in his termination.

[2]After the accident, Ledet completed his shift and worked two additional ten day shifts before October 20, 1989.

On February 8, 1990, Ledet was terminated retroactive to November 30, 1989 for "abandonment of job."

Ledet filed a claim for compensation and medical benefits under the LHWCA on April 5, 1990. A hearing was held before an Administrative Law Judge who found that: (1) Phillips' termination of Ledet was not a discriminatory act under the LHWCA; (2) Ledet was temporarily totally disabled from October 21, 1989 until September 4, 1990 when he reached maximum medical improvement; (3) Phillips had knowledge that Ledet's injury was work-related as of August 22, 1989, the day of the accident, and knowledge as of December 5, 1989 that Ledet was seeking medical treatment for this injury; and (4) Ledet's short-term position as an automobile salesman post-injury constituted suitable alternative employment. The ALJ awarded Ledet compensation for the period October 21, 1989 to September 4, 1990. He then remanded the case, in part, to the Director because there was no evidence in the record regarding Ledet's post-injury wages. On remand, Ledet was ordered to submit evidence of his wages as a car salesman to the Director who was to determine how much, if any, compensation was due for the period following September 5, 1990. The ALJ's award was affirmed by the

Benefits Review Board and Ledet timely appealed to this court.[3]

## ANALYSIS

Ledet first contends that the ALJ erred in concluding that his termination was not a discriminatory act. We are bound to uphold the ALJ's decision if it is supported by substantial evidence and is in accordance with law.[4]

Under the LHWCA, it is unlawful for an employer to terminate or otherwise discriminate against an employee claiming or attempting to claim compensation.[5] Phillips was notified in January 1990 that Ledet was represented by an attorney and was pursuing his claim for LHWCA benefits. Inasmuch as Ledet was not terminated until February 9, 1990, he claims that the decision to terminate him was a direct result of his claim for benefits and that Phillips' stated reason for his termination, abandonment of work, is merely a pretext.

The ALJ found no evidence of discriminatory motive. Rather, according to the ALJ, the evidence established that Ledet was terminated for failure to present medical evidence to substantiate his absence from work. Our review of the record

---

[3]The ALJ's award was affirmed as a matter of law when the Board did not act on the appeal within a year. See Omnibus Appropriations for Fiscal Year 1996, Pub.L. No. 104-134, § 101(d), 110 Stat. 1321-219.

[4]**New Thoughts Finishing Co. v. Chilton**, 118 F.3d 1028 (5th Cir. 1997).

[5]33 U.S.C. § 948a.

discloses that Ledet was repeatedly asked by Phillips to submit medical proof of his injury. As of the termination date, however, Phillips had only received one brief and undetailed report from Dr. Blanda, dated December 26, 1989, which stated that Ledet would be unable to return to work for approximately three to four weeks without disclosing the medical reason for same. Thus, the record supports the ALJ's rejection of Ledet's discrimination claim.

Ledet next objects to the ALJ's finding that his post-injury employment as a car salesman constituted suitable alternative employment, and to the ALJ's order that he submit evidence of his earnings from such employment to the Director.[6] Disability under the LHWCA is defined as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."[7] Disability thus is an economic as well as a medical concept.[8]

_____

[6]The ALJ awarded Ledet benefits for temporary total disability from the date of the accident, August 22, 1989, to the date of maximum medical improvement, September 4, 1990. The ALJ determined the date of maximum medical improvement from Dr. Blanda's observation that Ledet was capable of light duty work as of September 4, 1990. This finding is not challenged on appeal. Additionally, he awarded Ledet benefits for permanent total disability from the date of maximum medical improvement to January 1, 1991 when Ledet began working as a car salesman. After January 1, 1991 Ledet was to receive benefits for permanent partial disability based on his earnings as a car salesman.

[7]33 U.S.C. § 902(10).

[8]**Quick v. Martin**, 397 F.2d 644 (D.C. Cir. 1968).

The amount of compensation awarded is dependent on the nature and extent of the disability.[9] An employee is considered permanently disabled when he has any residual disability following the date of maximum medical improvement.[10] Any disability before reaching maximum medical improvement is thus considered temporary in nature.

The extent of the disability is characterized as either total or partial. To establish a *prima facie* case of total disability, the claimant must show that he is unable to return to his former employment. If the claimant is successful in establishing a *prima facie* case of total disability, the burden of proof then shifts to the employer to establish suitable alternative employment.[11]

---

[9]If a claimant is totally disabled, he would receive two-thirds of his pre-injury salary for the remainder of his life. 33 U.S.C. § 908(a). If partially disabled, the claimant's award would be determined under § 908(c) which provides a schedule of benefits for certain identified injuries, limiting the two-thirds of the pre-injury wages to a finite number of weeks. Where a specific injury is not listed in the schedule, § 908(c)(21) provides in "all other cases" for an award equal to two-thirds of the difference between pre-injury average wages and post-injury wage earning capacity. The wage earning capacity of the claimant is determined under § 908(h) by his actual post-injury earnings or, if the claimant does not have any actual post-injury earnings or the earnings do not fairly and reasonably represent his wage earning capacity, the fact finder may determine same.

[10]**Trask v. Lockheed Shipbuilding Construction Co.**, 17 BRBS 56 (1985).

[11]**New Orleans (Gulfwide) Stevedores v. Turner**, 661 F.2d 1031 (5th Cir. 1981).

Ledet contends that the ALJ erred in finding that his job as a car salesman constituted suitable alternative employment and, therefore, erred in awarding him benefits for permanent partial disability rather than for permanent total disability after January 1, 1991. The record shows that Ledet worked as a car salesman for Martin Chevrolet in Breaux Bridge, Louisiana for approximately six months beginning in January 1991. He was dismissed, however, for failing to meet his sales quotas.

Nevertheless, the ALJ found that because Ledet was physically able to perform the car salesman's job, Phillips had carried its burden of establishing the availability of suitable alternative employment. This finding must be rejected as neither in accordance with law, nor supported by substantial evidence.

We recognized in **New Orleans (Gulfwide) Stevedores v. Turner,** that the physical ability to perform a job is not the exclusive determinant whether the job constitutes suitable alternative employment. In addition to physical ability, the fact finder, here the ALJ, must also consider the "specific capabilities of the claimant, that is, his age, background, employment history and experience, and intellectual and physical capacities."[12] In the instant case, the ALJ did not consider whether Ledet had the mental ability or skills to work successfully as a car salesman. The

_____

[12]**Id.** at 1042.

reasons underlying his dismissal for poor sales performance must be parsed carefully. Further, as the ALJ properly noted in his Decision and Order, Phillips presented no meaningful evidence of suitable alternative employment.

After concluding that Ledet's position as a car salesman constituted suitable alternative employment, the ALJ noted that the record was devoid of any evidence showing Ledet's earnings from such employment. The ALJ then remanded the case to the Director and ordered Ledet to provide sufficient evidence to establish the amount of his actual post-injury earnings. From this information the Director was to determine whether Ledet was entitled to compensation after January 1, 1991, and, if so, the amount of benefits due.[13] As we previously have held, "[t]o constitute a 'final decision and order' of the ALJ, the order must at a minimum specify the amount of compensation due or provide a means of calculating the correct amount without resort to extra-record facts which are potentially subject to

_____

[13]Based on the evidence provided by Ledet, the Director was to determine Ledet's earning capacity by calculating Ledet's average weekly earnings from Martin Chevrolet, adjusted to reflect 1989 wage levels. The Director was then to compare Ledet's earning capacity to the stipulated average weekly wages of $696.45 he earned prior to the accident. If Ledet's earning capacity was lower than $696.45 then Ledet would be entitled to the difference between the stipulated average weekly wage and his earning capacity. If not, Ledet would not be entitled to any benefits for the period after January 1, 1991 because he would not have sustained any loss of wage-earning capacity.

genuine dispute between the parties."[14]  Although the ALJ provided a means of calculating the amount of benefits due, he impermissibly delegated his fact-finding duty to the Director.  In order to determine Ledet's post-injury earnings the Director would have to "resort to extra-record facts."  Such is impermissible.

Finally, counsel for Ledet objects to the ALJ's reduction of the hourly attorney fee and of the time and expenses billed in the fee application.  These determinations will be affirmed on appeal unless they are arbitrary, capricious, or an abuse of discretion.[15]  We find that the ALJ's reductions were rational and, therefore, affirm  the award of attorney's fees.

Accordingly, we VACATE the finding that the car salesman position was suitable alternative employment and the order remanding to the Director to gather evidence of Ledet's earnings as a car salesman and to calculate the compensation due therefrom.  That is a matter for the ALJ to complete.  The judgment appealed is AFFIRMED in all other respects.

AFFIRMED in part, VACATED in part, and REMANDED to the ALJ for further proceedings consistent herewith.

---

[14]**Severin v. Exxon Corp.**, 910 F.2d 286, 289 (5th Cir. 1990).

[15]**Muscella v. Sun Shipbuilding & Dry Dock Co.**, 12 BRBS 272 (1980).

EDITH H. JONES, Circuit Judge, concurring:

I concur in this good opinion on the understanding that in vacating and remanding to the ALJ we do not foreclose the possibility that, based on a more complete record, the ALJ could conclude that Ledet's car sales position may be found to be suitable alternative employment, or the employer may otherwise carry its burden under P&M Crane Co. v. Hayes, 930 F.2d 424 (5th Cir. 1991).